and it's Love v. Grashorn, number 231397. Good afternoon, Your Honors. May it please the Court, my name is Jonathan Eddy here on behalf of City of Loveland Police Officer Defendant Matthew Grashorn, with me today as well as co-counsel Jonathan Abramson. Your Honors, I'd like to start by first addressing the issue of jurisdiction before moving into the dispositive matter of qualified immunity. This Court has jurisdiction to decide the ultimate issues in this case. First, whether Defendant Grashorn's conduct was objectively reasonable under the undisputed facts in this case, and two, whether the law was clearly established. Contrary to plaintiff's argument, there are no material disputed facts in this case. The entirety of this rapidly unfolding and admittedly tragic event is captured on video. So, sorry to interrupt you so quick, but I don't, I had understood, maybe wrongly, that under Lewis v. Tripp, on a review, on an interlocutory appeal of the denial of qualified immunity, that we look at the universe of facts that the District Court found that a reasonable fact finder could infer, unless it falls within one of those exceptions, just like the blatantly contradicted exception. The District Court, well, am I wrong about that? No, that's correct, Your Honor. Okay, so in the District Court here laid out a number of things that the District Court thought that a reasonable fact finder could find, that Huckabur was not at large, that the dog was unleashed, the owners were there and had already called the first bubba off, that Grants Wharton Park is several yards away. And so, all of those are the universe of facts that we need to evaluate this abstract question of law, whether it violates a clearly established right, correct? We don't independently look at the video and say, what do we think a fact finder could find, because the District Court has already done it. So, yes, the District Court does lay out, in the first two pages of its order, the undisputed facts based on what the judge viewed in light of the video. You watch the video and he laid out the facts in the first two pages of his order. Where it becomes a little less clear is when the Court gets into the objective reasonableness analysis, and that's where I think the District Court, in error, conflated issues of law with questions of fact. Well, for example, is it historical fact when the District Court says that there was a finding that a fact finder could conclude that Officer Grasshorn was not in immediate danger? Isn't that a question of historical fact? No, Your Honor. That's a pure question of law under the precedent. Well, Plumhoff v. Picard, the United States Supreme Court case, is clear on this issue. The ultimate question of objective reasonableness is a pure question of law for the appellate. But I didn't read the question. I agree with you. Nobody would dispute that. Objective reasonableness is the sine qua non of the Fourth Amendment violation and certainly would be a violation here. But that's not what the District Court said. The District Court said that Grasshorn was not in immediate danger. Does Plumhoff say that it's a question of law whether somebody's in danger or not? Well, because it's so intertwined with the objective reasonableness analysis, it necessarily would require the court to either, A, look at the first list of facts that the District Court laid out, the objective facts viewed from the video. And then additionally, the court can then look at the video itself to make that determination because it is a pure question of law. And so I think the distinction is, this distinction is addressed in the Walton v. Powell case. That's a Tenth Circuit case where the court kind of goes through this distinction of what the Supreme Court meant by its Jones v. Johnson interpretation of what are questions of fact, what are questions of law. There, the key distinction was, in Johnson v. Jones, for instance, the key distinction was the court found that the officers were not entitled to qualified immunity on summary judgment because the officer's argument was that they didn't shoot the plaintiff in the first place. Their argument was not that their conduct was objectively reasonable. And so the factual dispute was necessarily what particular conduct occurred for purposes of the analysis. So what about when the District Court said that she found that Officer Grashorn had enough time to respond differently? A reasonable officer could have used nonlethal means to avoid whatever danger was posed by Herkimer. Is that a question of law or a question of historical fact? The defense views those as questions of law, Your Honor. Really? Because there's, the ultimate question is how much time did he have in this situation? And it's undisputed, both by what the court found in the first two pages of its order and by the video itself, that within less than ten seconds of Officer Grashorn exiting his vehicle, two large dogs were running towards him. And that Plaintiff's pit bull, Herkimer, did not respond to Plaintiff's verbal commands. It's also not disputed that Herkimer had advanced within less than six feet of Officer Grashorn and that less than three, or that three seconds had passed between the time Herkimer had left from Plaintiff's vehicle to the time Officer Grashorn opened fire. So the key factual issue here is how much time did Officer Grashorn actually have based on the undisputed facts of this case as evidenced by the video and, frankly, by the District Court's initial findings of fact within its first two pages of that order. Thank you. Well, Counsel, beyond the timing element, which doesn't seem to me to be the pivot point here, but it's really my understanding of how this fact pattern plays out is pretty commonplace, whether it be a postal worker or Amazon delivery or DoorDash, I mean, or just walking your dog in your neighborhood. Like dogs who are clearly pets of someone oftentimes unleashed will run up upon people. What doesn't seem to happen more commonly is those dogs are shot to death. So when we're looking at the reasonableness, why can't we take Mayfield, clearly established law principles, and then look to this fact pattern and say you can apply Mayfield with obvious clarity that doesn't allow officers just to shoot dogs to death that run up on them. Why is that an erroneous statement? Okay, so I guess there are two points to that question. So the first point would be that this is, you have to look at it in the context of an officer doing his job. This officer was called to a trespassing call, so he was there. Which is a real minor infraction at most, right? Agreed, Your Honor. Potentially an illegal dumping on a commercial site. Agreed, Your Honor. Okay. He was there for a purpose of a criminal investigation. So the ultimate issue here is whether, is the, you're weighing the plaintiff's property interest in their dog, which they certainly had, against the government's interest, Officer Grasshorn's interest, in conducting a criminal investigation. This dog was unleashed on someone else's property. It's undisputed that the plaintiffs in this case were trespassing. So that's kind of the first distinction between the examples you gave of someone just out walking their dog and an officer who's involved in a criminal investigation. With respect to the Mayfield case particularly, Mayfield 1, the 2016 case, Mayfield, that was a denial of qualified immunity on Rule 12b-6 where it was not refuted or where the dogs never advanced towards the officer or made any aggressive motions towards the officer. And, in fact, the dogs had been retreating from the officers when the officers chased them down and shot the dogs. That's a material distinction to what's shown on the video in this case, Your Honor. Officer Grasshorn, again, had less than three seconds to make a decision on whether to open fire when a pit bull was coming at him. And that's the key distinction. And so that goes right into the heart of the qualified immunity issue in this case. I'm sorry to talk about it. You keep saying pit bull. That was my understanding that Herkimer was not a pit bull. Well, I guess for purposes of facts that can be taken as true, the district court judge here found that it was, in fact, a pit bull. Resembling a pit bull. Resembling a pit bull. Okay, fair enough. So it would be, based on the video and based on what the district court judge found here, it would have been entirely reasonable for Officer Grasshorn to perceive Herkimer coming at him to be a pit bull and therefore potentially an aggressive breed of dog and to pose a heightened threat to him. But why does he have his, you know, instantly draws a gun? Well, you know, if we're looking again at reasonableness, you know, why reach for your firearm so quickly? Well, ultimately, Your Honor, the key point of this case is that we're dealing with a seizure of property, frankly. And so the fact that he draws his gun initially really has no bearing on whether the ultimate seizure of Herkimer was reasonable. Well, it seems to have some bearing because the seizure is, you know, accomplished by the use of the firearm, right? Correct. So I understand your question, Your Honor. Is the question really why didn't Officer Grasshorn employ alternative means? Why did he resort immediately? Exactly. Why is he reaching for his gun so quickly? I see. So one particular issue here that's common knowledge among law enforcement and particularly with Officer Grasshorn, who testified to this, is his alternative means in this case would have been the use of a taser. Tasers are historically very difficult to hit a moving target, especially one the size of Herkimer, who was 70 to 75 pounds. His alternative means to that would have been his plastic baton, which he believed would not have been effective in this situation, particularly when there were initially two dogs running at him. And so his understanding was that, you know, if worst case scenario, if any of these other alternative means fail, I'm going to get potentially seriously injured by this pit bull. And so his decision was to pull his gun. So one more question on alternative means and then I'll stop. But how does the Colorado, I think it's statute, the Dog Protection Act, fit into our analysis of clearly established law? Because my understanding is Colorado requires training law enforcement officers about use of alternative means. Correct. Our position is that it would have no bearing on the ultimate question of clearly established law. It's been long held under qualified immunity. The case law, it needs to be binding case law from either the Tenth Circuit, the United States Supreme Court, or potentially a robust. But also the obvious clarity, which, you know, doesn't require a case on all fours. So does it factor at all into potentially that component of what is clearly established? Well, what would be what would factor the most into obvious clarity would be what is shown on the video would be my argument, Your Honor. And the video again shows an officer with three seconds to make this decision on whether to use deadly force against Perkmer or not to use deadly force against Perkmer. And he chose the former. And that's that's where we are. We agree this is a tragic incident. He regrets his actions. But again, at the same time, you have to put the officer's safety in the moment against the plaintiffs, in this sense, compromise somewhat compromised property interests in their dog, because they were, in fact, trespassing. Their dog was unleashed on someone else's property.  Counsel, I'd just like to jump in on a passage. I'd like to read a passage from the district court's order that's been giving me some trouble. And I think it goes back to some questions that Judge Bacharach was asking. Anyway, the court says, although a reasonable jury could decide that Herkimer posed a danger to defendant, demonstrating the type of tense, rapidly evolving situation where allowance is given for the police to make split second decisions, it could also decide that he did not pose an immediate danger. Now, we're talking about disputed and undisputed facts. But can't there be undisputed facts, sort of undisputed underlying facts, leading to what is really almost an ultimate fact here, which is posed a danger? And the court's saying that, well, a reasonable jury could find posed a danger, and a reasonable jury could find not posed a danger. That seems to me to be a disputed issue of fact then, because the court doesn't resolve it. And that's what is going to go to the jury. But given that a jury could find no imminent danger, that gets the plaintiff past prong one. Now, what's wrong with looking at it that way? Well, it goes against what the Supreme Court has held in Plumhoff versus Ricard, where it was that type of situation where the facts themselves were not in dispute. Again, the conduct, what did and did not occur is not in dispute. The underlying danger is an issue of law. Whether in this instance the dog posed a danger, whether in other instances a suspect poses a danger, that's one thing. But that doesn't strike me as a pure legal issue. That's whether there's dangers. There are dangers. There are not dangers.  So I would argue that that is a question of law based on the defense's interpretation of Plumhoff. Okay. I understand your argument. I don't want to make you repeat it over and over, unless you want to. Well, I was just going to add to that. I was going to say, setting aside that point, this case can simply be resolved on the second prong of qualifying. That's where I was going. Okay. Very good. So what's your best case? Well, so I guess to answer that directly, Your Honor, the burden is not ours to do but what's the best case for you?  So there are no, I'll grant you that there are no binding cases out of the Tenth Circuit saying one thing or the other with respect to shooting dogs. The case that does the most analysis on this is frankly a district court case of Ranson. However, there are two very persuasive cases from this court, both preceding the events of the case at hand by no more than three months. And in both of those cases, being Mayfield 2 and also the decision in Kendall, I see my time is up. I may just finish this. Please finish up. Both of those cases came out in favor of the officer on the basis that in both of those situations the dogs were in fact running towards the officer. In one situation, it was undisputed that the dog may have been barking, but the courts conceded that there was, the court didn't say one way or the other whether the dog was acting per se aggressively or growling or showing teeth, and that's the Kendall case. The only undisputed fact that the decision turned on in that case was the fact that the dog had barked at the officer and then had run at the officer and had also not responded to the commands. The second case, Mayfield 2, it was undisputed that the dogs were acting aggressively and then charged towards the officer. In both of those cases, the court held that the officers were entitled to qualified immunity under both prongs of the analysis. We'll look at those cases. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is Sarah Schelke. I'm counsel for the plaintiffs, Wendy Love and Jay Hamm. I want to dive right into, I think, the core issue that is underlying a lot of the court's questions, and I think which has been fundamentally skipped in all of the arguments that have been raised by the appellate. And it's how this case really represents a critical floor in terms of how we evaluate both what the for a summary judgment ruling in favor of defendants as a matter of law. The defendants are saying as a matter of law, due to time, for example, three seconds, they want to overemphasize this factor and pull it out, that it should be as a matter of law reasonable. That's incorrect. If we look at every dog shooting case, not just in this circuit, but across the whole entire country, there's a unifying feature. There's a unifying precondition, and that is that the dog has to have represented an imminent threat. The officer needs to have believed that reasonably. And what the court will see, looking at every single dog shooting case, is that there is, in any case where summary judgment was granted to a defendant officer, some indications of aggressiveness prior to the officer shooting the dog. There is a bark. There is growling. There is hackles. There is a shooting like a missile. There is a tail that is straight back. There is other circumstances making it extremely risky to the officer. All of those conditions are conspicuously absent in this case. What the appellants are asking the court to do in requesting that on these facts, as a matter of law, it rule that qualified immunity should apply, is they are asking the court to essentially say that any unleashed dog that resembles a pit bull can be shot by an officer who encounters it. That's essentially the position that we're in by nature of the interlocutory appeal, the standard that they're on, and the fact that they have to argue to get around the jurisdictional problem that, as a matter of law, no rational jury could find that there was no threat. Let me ask you a question about that. One of the aspects, I think, of our precedents, like Cox, like Lewis v. Strip, is that if a district court doesn't necessarily specify what facts he or she is relying on, then we can look, not for a full record review, but we can look at the record to determine what facts that the district court reasonably relied on. Here, Judge Moore specifically said that he was relying on the video, and you can see Herkuber running toward the officer. Sure. Maybe the tail wasn't wagging. It's not audible at that point, so we don't really know, I don't think, if Herkuber was barking, but you can certainly see on the video. Can't we reasonably assume that one of the facts that Judge Moore was relying on was the fact that Herkuber was running toward Officer Grasshorn? Your Honor, I think that when Judge Moore mentioned that a jury might be able to find in the defendant's favor, that might have been something he was thinking of. However, I think when he was ruling that summary judgment was not appropriate, he was taking into consideration the nucleus of facts that includes it being undisputed and or, if it's in dispute, he's giving the inference to the plaintiffs, that Herkuber appeared to be a friendly dog. Right, but I guess I'm just really trying to hone in on whether Herkuber was running to the officer. Do you deny that he was running toward Officer Grasshorn? I mean, on the video it looks pretty clear that he is. Your Honor, I would agree with that to an extent. There's an important factual distinction which the defendants omit, but if you re-watch the video, and admittedly having to re-watch the video is terrible. I'm happy to have done some of the work for everyone to not do it, but what you can see and what Officer Grasshorn testified to in his deposition is that Herkuber was slowing as he was reaching the officer, and he was peeling off to his right to turn around, which are two very important facts when we're considering is this dog an imminent danger. Grasshorn is trained, and common sense and life experience tells us that a dog who's going to attack is going to behave differently than that. It's going to be moving very quickly, its body language is going to be different, and it's certainly not going to be peeling off to the side. Those are important facts, and if you look as well at the fact that Officer Grasshorn, he actually has to turn to a 45 degree angle to shoot Herkuber. I think it's fair to say, given that the court relied on the video, that even that alone could cause a jury to say this was an unreasonable shooting. He's having to turn to the side to shoot him. And another fact, and again this is yet to be addressed by the appellants at all, is the second bullet. Why did he shoot twice? When Officer Grasshorn was asked about this in his deposition, he said, I'm not going to wait to see if the first shot was effective. Well, that kind of statement is unreasonable as a matter of law. In the undisputed facts number 20 that were submitted with the motion for summary judgment, the appellants themselves conceded that when the second bullet was fired, Herkuber was rolling onto his side, onto his stomach, apparently disabled. So there are a lot of cases. Velo out of the Seventh Circuit. Counselor, I'm sorry to interrupt you. Can I ask you about the clearly established prong of qualified immunity? And I read your response brief to say that Mayfield provides clearly established law. I'm wondering how much work Mayfield does in this context, because Mayfield holds, of course, that dogs, pets, are property that can be subject to seizure and Fourth Amendment requirements. But there's always this tension between sort of generalities and specifics. How much was Officer Grasshorn on notice about what he could and could not do in the context of when someone's property, and here it's a living thing, a dog, is running up towards him? Because Mayfield, to me, doesn't really give Officer Grasshorn any notice. So are you about what he lawfully can do and can't do in that situation? So are you relying only on Mayfield? But I thought I heard you say earlier, maybe you're saying, well, if you look at the universe of cases, the overwhelming controlling weight of authority kind of provides what is clearly established law. Can you just help me understand your argument? Yes. It's both. There's a lot of consistency, both in this circuit and out on this subject. And I would contend that Mayfield actually does provide a lot of guidance, particularly Mayfield 2, which I know Judge Bacharach was on the panel in that case. And what is discussed at length in saying, listen, we're granting summary judgment because of qualified immunity, is they're listing indications of aggressiveness. The dog that was shot in Mayfield 2, and, you know, I will just note for procedural posture, I don't think it's supremely impactful, but the plaintiffs were pro se in that case, and they did, it sounds like, struggle so much to get to record references to create the material fact disputes. And so largely the defendant's version of facts was adopted. But regardless, the law that was given is very clear. It's saying that there is blood on this white husky. Livestock had just been attacked. The police had just been called on account of the livestock being attacked. There was nearby additional livestock that they were worried about being attacked. Kansas law is referenced because Kansas law states that officers may kill a dog that has attacked livestock recently. All that goes into the reasonableness analysis, and all of it is under the umbrella of assessing imminent danger. That is, we are looking for any kind of indications that the dog has exhibited any history of aggressiveness, any aggressive traits, and I believe 2 in Mayfield that the neighbors were roaming the area with firearms intending to shoot those dogs themselves. So it was additionally like a very tense and potentially violent situation where it becomes more reasonable in that case. Turning to what kind of guidance a case like that gives Officer Grasshorn, it's again, you know, it's funny that this morning in the Esteta Harmon case, Judge Federico, you had asked the question, I believe. You had said, doesn't there need to be some demonstration of hostile intent to justify the resort to lethal force in the case involving just a knife nearby? And that, you know, thematically has always been at the core of how we do the Fourth Amendment, which is, you know, just the mere presence of a knife, the mere presence of teeth on a dog, that's not enough to just say you can gun down the dog. What the Fourth Amendment requires is reasonableness. Reasonableness means necessity. Necessity involves two things. One, indications of aggression, and two, imminency. All of those are absent in this case, conspicuously so. Doesn't the sort of analogy with Harmon sort of crystallize the dilemma for your side on prong two? Because unlike a suspect evading the police, a dog can't speak. We have an officer, anyone would have to infer a dog's next move based on speculation. And so what do you do with the defendant pointed to Kendall? And when the court concluded that there was not a violation, not just a clearly established violation, but not a constitutional violation to shoot that dog, now there the dog was barking. We don't know whether the dog was barking. I don't think because the recording doesn't show it. But how would an officer for prong two be able in the moments that the officer has to decide, okay, the dog barked in Kendall, but I don't hear the barking now. That dog was 90 pounds. This dog, I can't weigh the turcomere, but probably 35 pounds. Doesn't sort of the ambiguity of a dog's intent sort of crystallize why an officer should be given considerable latitude at prong two? I don't think it does, Your Honor. Here's what I'll say to this. I can imagine a case where what Your Honor is referring to might be an issue, where there's a single bark maybe, something like that, being a grayer area. In this case, it's so straightforward, and it is the floor kind of like we're talking about, because not only do we have a dog that has complete absence of any aggressive indications, but a dog that's in fact demonstrating friendly and affiliative behavior. In that scenario, we are just so far on the other side of the spectrum that it's very easy to deal with both of those prongs. I am the last person on earth who would want to suggest anything to expand qualified immunity. However, the reality is if you look across the country, a lot of officers can get qualified immunity here and do just based on growling and hackles up, you know, very small indications, because they're at least getting to danger, and in some circuits that's enough. In Colorado, with the Dog Protection Act stating that you must utilize nonlethal alternatives where feasible, we must permit owners to get the dog under control, where you have an officer saying, I'm not going to do that because that would let people get away with stuff, where you have an officer who has testified that Herkimer did not bark or growl, an officer who listed what he believes to be indications of aggressive behavior, which is hackles up, growling, you know, running like a missile, tail straight back, he listed them all and then says, and none of those were present in Herkimer. In that type of a case, we are so safe in the green on prong two, and if I may just finish my thought, we don't have to get into that gray area. On these facts, we are really at the baseline, which is that the appellant is saying, as a matter of law, you know, focus on the time and ignore the fact that there is no danger. That's not what we're doing on an interlocutory appeal with motion for summary judgment. No rational jury could, the standard is no rational jury could find that that was reasonable. We know, we've got the guidance on imminent danger from Mayfield, and we have in this case a video and grassroots self-admitting, no indications of aggressiveness. That should foreclose qualified immunity in this case. I think I misspoke, by the way. You know, I think I was misremembering, because on the video, you actually can't hear the audio at that point, right? The first 30 seconds, there is no audio. But at the point of the shooting. You cannot hear it. Okay. Yeah. Counsel, can I have one more before you sit down? Is the reasonableness concern here the use of lethal force? In other words, had Officer Grashorn effectuated a seizure by alternative means, a baton, taser, something to subdue Herkimer short of lethal force, if that were to happen, if that would have happened, would he be entitled to qualified immunity? I think that he would certainly be on much squarer footing to ask for it, Your Honor. The case law has cleared that where people attempt, where officers attempt non-lethal alternatives and they're unsuccessful first, that you're going to get closer to getting qualified immunity at a summary judgment stage. And the issue, again, in this case is that he stated, both in his deposition and on scene, that he doesn't consider non-lethal alternatives because they don't always work. Shooting the dog is what always works. There is a whole bunch of both expert testimony and just common sense inferences that can be drawn from this, like that he can just get back in his car, that he can just use his baton. And, again, it's always been appellee's position that he could have correctly perceived a friendly dog to be a friendly dog and done nothing. And the fact that he said, I'm just, because friendly dogs can bite, I'm not going to risk it, is the fundamental problem in this case. And what makes this case really represent such a grave risk, if the appellant's view were to be adopted, in terms of just getting... Thank you. Thank you, Your Honor. Thanks to both of you for your arguments this morning. The case will be submitted. Counsel are excused.